The Honorable Paul Bookout State Representative 2104 Catherine Drive Jonesboro, AR 72404
Dear Representative Bookout:
I am writing in response to your request for an opinion on two questions concerning an opinion that was issued by my predecessor (Attorney General Opinion 97-127) involving the Arkansas Rights of the Terminally Ill or Permanently Unconscious Act (A.C.A. §§ 20-17-201 — 218 (Repl. 2000)). Your questions focus on certain language in Opinion 97-127 regarding A.C.A. §20-17-214, which provides for the execution of a "declaration"[1] by particular persons on behalf of a patient under certain circumstances. As you note, Opinion 97-127 makes the statement that a health care provider would have a "duty to consult these persons. . . ." Op. 97-127 at 2. You have asked the following questions:
 1. Do health care providers have a `duty' under Arkansas law to consult with and provide information to the listed individuals in Ark. Code Ann. § 20-17-214 regarding an advance directive and/or a health care proxy if the patient has neither? If there is a duty, what Arkansas law creates the duty?
 2. Does the term `incompetent patient' as used in your opinion No. 97-127 include minors or only those adults who are no longer able to make health care decisions? In other words, if there is a duty under Ark. Code Ann. § 20-17-214 to consult and/or inform, does the duty apply to a minor patient?
RESPONSE
It is somewhat difficult to answer these questions without knowing what is meant precisely by "consult with and provide information . . . regarding an advance directive and/or a health care proxy." According to my review, there is no state law requiring that health care providers inform persons of their rights under the Arkansas Rights of the Terminally Ill or Permanently Unconscious Act ("the Act").[2] It is therefore my opinion that the answer to your first question is "no" if you are referring to a duty to consult or inform regarding rights under the Act. There is no such duty under state law. But see n. 2, supra
regarding federal law.
With regard to Opinion 97-127, although I cannot speak for my predecessor, I interpret the statement regarding a health care provider's "duty to consult [the persons listed in A.C.A. § 20-17-214]" as recognizing the fact that these persons are given the authority under §20-17-214, in the stated order of priority, to make treatment refusal decisions on behalf of a patient under the prescribed circumstances. In other words, the right of the patient to make a decision whether to refuse life-sustaining treatment may be exercised, in order of priority, by the specified individuals or groups of individuals. Section 20-17-214
states:
 If any person is a minor, or an adult where a valid declaration does not exist and a health care proxy has not been designated and who, in the opinion of the attending physician, is no longer able to make health care decisions, then such declaration may be executed in the same form on his or her behalf by the first of the following individuals or category of individuals who exist and are reasonably available for consultation:
(1) A legal guardian of the patient, if one has been appointed;
 (2) In the case of an unmarried patient under the age of eighteen (18), the parents of the patient;
(3) The patient's spouse;
 (4) The patient's adult child, or, if there is more than one (1), then a majority of the patient's adult children participating in the decision;
(5) The parents of a patient over the age of eighteen (18);
 (6) The patient's adult sibling, or, if there is more than one (1), then a majority of the patient's adult siblings participating in the decision;
(7) Persons standing in loco parentis to the patient;
 (8) A majority of the patient's adult heirs at law who participate in the decision.
One legal commentator has noted the following regarding this provision:
 This provision of the law explicitly grants to the specified surrogates the authority to make the same treatment refusal decisions that the patient could have made for himself or herself. The provision essentially codifies and particularizes the law on refusal of treatment for incompetent patients that has developed over the last two decades by common law courts, and the established medical custom of consultation with members of the patient's family.
Robert B. Leflar, Advance Health Care Directives Under Arkansas Law,
1994 Ark. L. Notes 37, 42.
Opinion 97-217 was addressing a question concerning a provider's "duty" under the Act to discuss health care decisions with the next of kin in the case of an individual who is unable to make decisions or communicate. See Op. 97-127 at 1. The Opinion cites § 20-17-214, noting that it allows for the execution of a declaration on the incompetent patient's behalf by the listed individuals, in the specified order of priority. It reasonably follows, therefore, that the term "duty" was used in relation to the priority listing in § 20-17-214, under the assumption that the attending physician was consulting family members when faced with a decision whether to withhold or withdraw life-sustaining treatment, and not to suggest that the provider has a separate "duty" to inform persons regarding an advance directive or a health care proxy. When consulted regarding this decision concerning life-sustaining treatment, these individuals or groups are authorized to execute a declaration on the patient's behalf according to a priority listing that should be recognized by the attending physician. While it is my opinion that there is no duty on the part of the physician to consult or inform the designated individuals regarding their authority to execute the statutory declaration, it should perhaps be noted that according to the Arkansas Supreme Court, the written declaration is "for the protection of medical personnel." Porter v. State, 308 Ark. 137, 145, 823 S.W.2d 846
(1992). This may suggest the desirability of informing the designated individuals regarding the written declaration.[3]
With regard to your second question, as I noted above, this Opinion was issued by my predecessor and the hypothetical question in that instance pertained to an individual who was unable to make decisions or communicate. Hence, the Opinion's reference to an "incompetent patient."See Opinion at 2. If the question was intended to encompass a patient who was a minor, this was not clear and I do not interpret the Opinion as addressing minors.
It seems clear, however, in my opinion, that, the so-called "surrogate" decision-making embodied in § 20-17-214[4] does generally extend to minor patients.[5] A minor cannot execute a statutory declaration. See
A.C.A. § 20-17-202 (a) (providing that a declaration may be executed by "[a]n individual of sound mind and eighteen (18) or more years of age. . . .") The individuals listed in A.C.A. § 20-17-214 are therefore given the authority to execute a declaration on the minor patient's behalf. And the attending physician should, as in the case of an incompetent adult with no previously executed declaration, recognize the priority listing under the statute.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh
[1] The "declaration" provided for under the Arkansas Rights of the Terminally Ill or Permanently Unconscious Act relates to the use of "life-sustaining treatment." See A.C.A. §§ 20-17-201 (definitional section) and 20-17-202 (recommended form).
[2] There is a provision in the federal Medicare Act that requires health care facilities to inform adult patients of their right under state law to formulate an advance directive. 42 U.S.C. § 1395cc (a) (1) (Q) and (f) (Supp. 2001).
[3] It must also be recognized, however, that conditioning the provision of health care services upon either the execution or the absence of a declaration is specifically prohibited. A.C.A. § 20-17-210 (c).
[4] See Leflar, Advance Health Care Directives Under Arkansas Law,supra at 42.
[5] Some qualification in the case of minors is necessary, in my opinion, because mature minors have legal capacity to make health care decisions. See Leflar, supra at 39.